```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/12/2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
STEPHEN THOMAS,                                                   :
                       Plaintiff,                            :
        -v-                                                        :      10 Civ. 8787 (JMF)
                                                           :
DORA SCHRIRO, *et al.*,                                           :      MEMORANDUM
                       Defendants.                           :      OPINION AND ORDER
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Stephen Thomas, a state prisoner proceeding *pro se*, brings this action pursuant to Title 42, United States Code, Section 1983, claiming violations of his Eighth and Fourteenth Amendment rights.[1]  Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Defendants' motion is GRANTED, and the Complaint is dismissed.

## BACKGROUND

      The following facts are taken from the Third Amended Complaint ("TAC") (Docket No. 39) and, to the extent it is consistent with the TAC, from Plaintiff's memorandum of law and are assumed, for purposes of this opinion, to be true.  *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss," a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." (internal quotation marks omitted));

---

[1] It is unclear whether Thomas was a convicted prisoner or a pretrial detainee at the time of the events alleged here, and therefore whether his claims should be analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment or the Due Process Clause of the Fourteenth Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  That distinction, however, is irrelevant here because the analysis of Thomas's claims is the same in either case.  *See id.* at 70-72.

*Braxton v. Nichols*, 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."); *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990) ("The policy reasons favoring liberal construction of *pro se* pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint.").

At around noon on December 29, 2009, Thomas was detained at the Otis Bantum Correctional Center ("OBCC"). (TAC ¶ 10). While in the OBCC intake area, Defendant Correctional Officer A. Johnson informed Thomas "that he had to give up all personal property." (*Id.*). Thomas turned over his coat and identification materials but "refused to give up his orthotic boots," which he needed as a result of an injury sustained fifteen years earlier. (*Id.*). He told the officer about his foot injury and explained that the orthotic boots "support and comfort" his foot, enabling him to "walk properly." (*Id.*).

Officer Johnson called Defendants Captain Benjamin Eason and Officers Brown, Devastey, Rhodes, Hernandez, and Sampson to the scene. (*Id.* ¶ 11). Thomas alleges that the officers threatened him "with physical harm and removed [him] by force . . . to another" intake cell. (*Id.*). The Captain showed Thomas the policy set by Defendant Schriro, Commissioner of the New York City Department of Corrections, stating that prisoners are not allowed to wear personal footwear, and explained that he is "authorized to enforce compliance" with that policy. (*Id.* ¶¶ 11-12). In response, Thomas again explained that he had injured his foot. (*Id.* ¶ 12). Nevertheless "[his] foot condition was totally disregarded and [he] was continually verbal[ly] threatened." (*Id.*).

When he continued to insist on keeping his orthotic boots, Thomas "was confined to [a] cell in the intake area, . . . deprived of food and water for 16 hours, . . . [and] verbally assaulted with threats of physical harm." (*Id.* ¶ 13). "[T]hirsty, hungry, and fearing for [his] safety," at approximately 4:00 a.m., Thomas gave the officers his boots. (*Id.*). In exchange, he was given a "non-supportive slipper-like sneaker" to wear. (*Id.*). He was then "neither fed nor given any water, but taken to the Medical Department for admission purposes only." (*Id.*). While there, Thomas informed the medical staff about his foot problem, but was told that there was nothing they could do to help. (*Id.*).

In January of 2010, Thomas was transferred to the George R. Vierno Center ("GRVC"). (*Id.* ¶ 15). He explained his foot condition to the GRVC intake captain and informed the officer that he was beginning to feel pain in his injured foot. (*Id.*). The captain gave Thomas "a smaller size . . . slipper" he thought "might help [him] walk better" and told him to go to sick call in the morning. (*Id.*). The next morning, Thomas went to sick call and was told that he was added to the list to see a podiatrist. (*Id.* ¶ 16). But he never saw a podiatrist, and was not given any medication for his pain. (*Id.*). For the next several months, Thomas went to sick call but received no medical attention. (*Id.* ¶ 17). He alleges that, without conducting an examination, the medical staff told him "he was making up his foot problem and not to come back to sick-call." (*Id.*).

Despite this admonition, on June 10, 2010, Thomas again went to sick-call, this time because he was suffering from a severe foot fungus. (Reply Defs.' Mot. Dismiss ("Opp'n") (Docket No. 47) 4). He alleges that the fungus was a result of being required to "wear several different pairs of used, and improper correctional center footwear." (TAC ¶ 27). The medical staff immediately examined his foot and began treatment, and

3

Thomas was sent to see a podiatrist the following week. (*Id.* ¶ 28). The podiatrist examined Thomas's feet, prescribed medication, and ordered x-rays. (*Id.*). After reviewing the x-rays, the podiatrist issued Thomas a special footwear permit. (*Id.* ¶ 29). Thereafter, Thomas experienced no further foot issues. (Opp'n 5).

Based on these facts, Thomas claims that Defendants "misuse[d] their authority." (TAC ¶ 18). In particular, he alleges that Defendant Schriro implemented or upheld an unconstitutional policy — presumably, though Thomas does not specify, of requiring inmates to wear state-issued footwear — that "violated [his] medical condition and . . . caused him injuries, pain and suffering" (*Id.*); and that Defendant Czernianski and Mulvey "knowingly enforced" this policy (*Id.* ¶ 19). In addition, Thomas alleges that Defendants Eason, Johnson, Brown, Devastey, Hernandez, Rhodes, and Sampson "knowingly disregarded [his] medical foot condition" and "used threats of physical harm, [and] food and water deprivation for several hours to terrorize [him] into giving up his orthotic boots." (*Id.* ¶ 20). This conduct, Defendant claims, constituted cruel and unusual punishment. (*Id.*). Finally, Thomas claims that he was denied medical care, in deliberate disregard of his medical needs. (*Id.* ¶¶ 21-24).

## DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation mark omitted). Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11 Civ. 8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]*ro se* complaints must contain sufficient factual allegations to meet the plausibility standard.").

**B. Inadequate Medical Care**

To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to his serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and brackets omitted). This "standard

embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (internal quotation marks omitted). To qualify as "sufficiently serious," the underlying condition must be one "of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). "Second, the charged official must act with a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66.

In the present case, Thomas fails to satisfy the objective prong of the deliberate indifference standard. Thomas alleges that, as a result of Defendants' allegedly inadequate medical care, he suffered pain in his injured foot and a severe foot fungus. He does not allege, however, that these symptoms were life-threatening; nor does he allege that continuing to wear the prison-issued shoes without receiving podiatric treatment caused or could have caused his foot injury to worsen. And his foot fungus was treated immediately. As ample precedent in this Circuit makes clear, these sorts of allegations are insufficiently serious to maintain a deliberate indifference claim. *See, e.g.*, *Walker v. Clemson*, No. 11 Civ. 9623 (RJS) (JLC), 2012 WL 2335865, at *1 (S.D.N.Y. June 20, 2012) (report and recommendation) (holding that prison shoes alleged to cause "pain, chronic fungus, and a painful gait" were not unconstitutional (internal quotation marks and brackets omitted)), *adopted by* 2012 WL 3714449 (S.D.N.Y. Aug. 28, 2012); *Brown v. DeFrank*, 06 Civ. 2235 (AJP), 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) (collecting cases); *Hernandez v. Goord*, 02 Civ. 1704 (DAB), 2006 WL 2109432 at *6 (S.D.N.Y. July 28, 2006) (holding that although plaintiff's foot injury was "undoubtedly painful" and resulted in plaintiff having difficulty walking, it was not "sufficiently serious" to merit constitutional protection because it did not render plaintiff "completely

dysfunctional"). Accordingly, Thomas's claims based on inadequate medical treatment must be and are dismissed.

## C.  Deprivation of Food and Water

Thomas's claim that he was deprived of food and water is more colorable, but ultimately fails as well. Although "the Eighth Amendment's prohibition against cruel and unusual punishment does not mandate comfortable prisons," it is beyond dispute that "the conditions of confinement must be at least humane." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks and citation omitted). "[T]o establish a violation of his Eighth Amendment rights," a prisoner must allege "a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities." *Id.* (internal quotation marks omitted). The deprivation of food and water during detention, if sufficiently long, meets this standard. *See, e.g.*, *Simmons v. Kelly*, 06 Civ. 6183 (RJS), 2009 WL 857410, at *7 (S.D.N.Y. Mar. 31, 2009).

The catch, which is fatal to Plaintiff's claim, is that there is no agreement among courts about what qualifies as a sufficiently long deprivation of food and water to state a claim. "Courts in this jurisdiction have held that a deprivation of food and water during detention that only lasted a few hours did not rise to the level of a constitutional violation. On the other hand, a pre-arraignment detainee's allegation that he was deprived of food and water for two-and-a-half days was deemed sufficient to state a claim." *Simmons*, 2009 WL 857410, at *7 (comparing *Webster v. City of New York*, 333 F. Supp. 2d 184, 199-200 (S.D.N.Y. 2004), with *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990)). Where the length of the alleged deprivation was in between these poles, courts have gone both ways. *Compare, e.g.*, *Simmons*, 2009 WL 857410, at *7-8 (denying a

7

motion to dismiss where the plaintiff alleged a deprivation of food and water for thirty hours), *and Tavarez-Guerrero v. Toledo-Davila*, 573 F. Supp. 2d 507, 512 (D.P.R. 2008) (holding that seventeen hours without food or water "certainly implicates the Eighth and Fourteenth Amendments"), *with Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987) (holding that deprivation of food and water for "approximately twenty hours," although "harsh and unfortunate," was not unconstitutional).

The Court need not decide which side of the line the sixteen-hour alleged deprivation in this case would fall, as Plaintiff's claim fails either way. That is because qualified immunity shields government officials from civil suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although there is, of course, a certain length of time beyond which a deprivation of food and water would violate a clearly established constitutional right, given the lack of consensus over the constitutionality of a sixteen-hour deprivation, it cannot be said that, at the time of Defendants' conduct, "'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *Walker v. Schult*, 717 F.3d 119, 125-26 (2d Cir. 2013) (quoting *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2083 (2011)). Accordingly, even assuming *arguendo* that Plaintiff's allegations are sufficient to state a claim for violation of the Eighth or Fourteenth Amendment, Defendants are entitled to qualified immunity. *See Costello v. City of Burlington*, 632 F.3d 41, 51-52 (2d Cir. 2011) (noting "that a court may, in its own discretion, refrain from determining whether a constitutional right has been violated and instead move directly to the question of

qualified immunity (i.e., whether a constitutional right was clearly established at the time the defendant acted)" (citing *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009)).

### D. Verbal Harassment

Finally, Thomas alleges that the OBCC intake officers verbally harassed and threatened him when he refused to give up his orthotic boots. It is unclear whether he contends that this harassment represents a constitutional violation. In any event, "[a]lthough indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Plaintiff and to close the case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: July 12, 2013
      New York, New York

JESSE M. FURMAN
United States District Judge